No. 22-50281 & 22-50283

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

*v.*

TRAVIS SCHLOTTERBECK AND JAMES VLHA,
*Defendant-Appellants*.

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA DISTRICT COURT NO. CR 19-343-GW*

# GOVERNMENT'S SUPPLEMENTAL BRIEF

BILAL A. ESSAYLI
United States Attorney

CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division

SURIA M. BAHADUE
Assistant United States Attorney
Deputy Chief, General Crimes Section

1200 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-5487
Email: suria.bahadue@usdoj.gov

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**DESCRIPTION** **PAGE**

A. *Duarte* and *B & L Productions* Reaffirm *Vongxay* and *Teixeira* Following *Bruen* .......... 2

B. *Duarte* and *B & L Productions* Confirm that § 922(d)(1) and § 922(a)(1)(A) are Constitutional Following *Bruen* .......... 8

## TABLE OF AUTHORITIES

**DESCRIPTION** **PAGE(S)**

**Cases**

*B & L Productions v. Newsom*,
104 F.4th 108 (9th Cir. 2024) ........ passim

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ........ 7

*New York State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) ........ passim

*Teixeira v. County of Alameda*,
873 F.3d 670 (9th Cir. 2017) ........ 1, 3, 5, 6

*United States v. Duarte*,
137 F.4th 743 (9th Cir. 2025) ........ passim

*United States v. Knipp*,
--- F.4th ---, 2025 WL 1431395 (6th Cir. May 19, 2025) ........ 9

*United States v. Sanches*,
86 F.4th 680 (5th Cir. 2023) ........ 9

*United States v. Soto*,
2025 WL 1276242 (5th Cir. May 2, 2025) ........ 12

*United States v. Vongxay*,
594 F.3d 1111 (9th Cir. 2010) ........ 1, 2, 3, 4

**Statutes**

18 U.S.C. § 922(a)(1)(A) ........ passim

18 U.S.C. § 922(d)(1) ........ passim

18 U.S.C. § 922(g)(1) ........ 3, 4

**TABLE OF AUTHORITIES (continued)**

**DESCRIPTION** **PAGE(S)**

18 U.S.C. § 923(a), (d) .......... 10

**Constitutional Provisions**

U.S. Const. amend. II .......... 6

# GOVERNMENT'S SUPPLEMENTAL BRIEF

Defendants Travis Schlotterbeck and James Vlha operated an unlicensed gun business manufacturing and selling untraceable assault weapons. After selling weapons to a felon who was a confidential informant and to undercover agents, defendants were charged with conspiring to engage in and engaging in the business of dealing and manufacturing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A). Schlotterbeck was also charged with selling a firearm to a felon, in violation of 18 U.S.C. § 922(d)(1). Defendants claimed that both statutes violated the Second Amendment based on *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). After the district court rejected their arguments, they pleaded guilty and appealed.

Sections 922(d)(1) and 922(a)(1)(A) comply with the Second Amendment. This Court has previously held that the Second Amendment confers neither a possessory right to felons, *United States v. Vongxay*, 594 F.3d 1111, 1114-15 (9th Cir. 2010), nor a freestanding right to sell firearms, *Teixeira v. County of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) (en banc). Following *Bruen*, this Court has now explicitly upheld those precedents in *United States v. Duarte*, 137 F.4th

743 (9th Cir. 2025) (en banc), and *B & L Productions v. Newsom*, 104 F.4th 108 (9th Cir. 2024), respectively. Like *Vongxay* and *Teixeira*, *Duarte* and *B & L Productions* foreclose defendants' arguments that § 922(d) and § 922(a)(1)(A) are unconstitutional.

Accordingly, this Court should affirm.

### A. *Duarte* and *B & L Productions* Reaffirm *Vongxay* and *Teixeira* Following *Bruen*

Before *Bruen*, the Supreme Court and this Court had repeatedly recognized that the Second Amendment safeguards an individual right of law-abiding citizens—not felons—to possess and carry firearms. *Vongxay*, 594 F.3d at 1114-15. (*See* GAB-22-27.) This Court had also held that the Second Amendment does not confer a freestanding right to engage in firearms commerce divorced from that possessory right. *Teixeira*, 873 F.3d at 677-78. (*See* GAB-27-31.) As the government explained in its answering brief, *Bruen* reinforced those principles and did not upend this Court's precedent. (*See* GAB-31-35.) Thus, following *Bruen*, § 922(d)(1)'s prohibition on selling firearms to felons and § 922(a)(1)(A)'s license requirement to commercially sell or manufacture firearms both remain valid—because felons do not have a right to

possess firearms in the first place, and because requiring gun dealers to obtain a license encroaches on no one's possessory right. (GAB-45-65.)

This Court's decisions in *Duarte* and *B & L Productions* now confirm that conclusion. Each explicitly upheld this Court's pre-*Bruen* precedent—*Vongxay* and *Teixeira*, respectively—and thus establish that the Second Amendment neither bars dispossessing felons as a class nor confers a freestanding right to sell firearms. *See Duarte*, 137 F.4th at 749, 761; *B & L Productions*, 104 F.4th at 118 & n.18.

To begin, *Duarte* held that 18 U.S.C. § 922(g)(1) constitutionally prohibits "all felons" from possessing firearms. 137 F.4th at 761. There, Duarte possessed a firearm and ammunition despite having sustained multiple felony convictions for vandalism, felon in possession of a firearm, evading a peace officer, and possessing a controlled substance for sale. *Id.* at 748. After a jury convicted him of § 922(g)(1), Duarte claimed on appeal that following *Bruen*, the statute was unconstitutional as applied to "non-violent felons" like him. *Id.* at 749.

After a divided panel accepted that argument, an *en banc* panel rejected it. The *en banc* Court first determined that *Vongxay*—which held that "felons are categorically different from the individuals who

have a fundamental right to bear arms," 594 F.3d at 1115—remains good law following *Bruen*. *See Duarte*, 137 F.4th at 750-52. It explained that *Bruen* "did not change or alter" the Supreme Court's repeated assurances that laws prohibiting felons from possessing firearms are presumptively lawful; rather, *Bruen* "support[ed] *Vongxay's* holding that § 922(g)(1) constitutionally prohibits the possession of firearms by felons." *Id.* at 750. In doing so, *Duarte* relied on many of the same statements in *Bruen* that the government cited in this case. *Compare id.* at 751-52, *with* GAB-31-36. In particular, *Bruen* limited the scope of its opinion to law-abiding citizens, using that phrase no fewer than fourteen times, and endorsed shall-issue licensing regimes that require applicants to undergo background checks. *Compare Duarte*, 137 F.4th at 751-52, *with* GAB-31-36.

In addition to reaffirming *Vongxay*, this Court applied *Bruen's* two-step test and confirmed the constitutionality of § 922(g)(1). *Duarte*, 137 F.4th at 752-62. While it concluded that Duarte's conduct was covered under the Second Amendment's plain text, *id.* at 752-54, this Court held that § 922(g)(1) comports with the nation's historical tradition of firearm regulation, citing much of the same historical

evidence that the government cited here to make the same point. *Compare id.* at 755-62, *with* GAB-36-43. The Court, accordingly, deemed that "historical tradition . . . sufficient to uphold the application of § 922(g)(1) to *all* felons." *Duarte*, 137 F.4th at 761 (emphasis added).

This Court also upheld its pre-*Bruen* precedent regarding firearms commerce in *B & L Productions*, 104 F.4th at 118, n.18. There, petitioners claimed that, following *Bruen*, state statutes banning the sale of firearms on state property violated the Second Amendment. 104 F.4th at 111, 117-20. Rejecting that argument, this Court held that the plain text of the Second Amendment did not cover the conduct at issue—"contracting for the sale of firearms and ammunition on state property." *Id.* at 117. And because petitioners failed to show that their conduct fell within the Second Amendment's plain text, the Court did not assess whether the ban on selling firearms on state property comported with the historical tradition of firearm regulation. *Id.* at 117-20.

In reaching its conclusion, this Court reaffirmed *Teixeira*'s "text-and-history analysis" of the Second Amendment and held that it remains "good law." *Id.* at 118 & n.18. As in *Teixeira*, the Court first

interpreted the plain text of the Second Amendment to "directly protect[] one thing—the right to 'keep and bear' arms." *Id.* (quoting U.S. Const. amend. II.) In other words, the Court explained, it "says nothing about commerce." *Id.* Next, the Court acknowledged its observation in *Teixeira* that the Second Amendment protects "ancillary rights necessary to the realization of the core right to a possess a firearm for self-defense," but reaffirmed that this protection concerns the right to *acquire* firearms, not the right to *sell* them. *Id.* at 117-118 & n.18 (internal quotation marks omitted). And even then, the acquisition right is violated only when it is "meaningful constrain[ed]." *Id.* at 118-19. For instance, a ban on all sales of a certain type of gun or ammunition in a region "meaningfully constrains the right to keep and bear that firearm or ammunition," but "a minor constraint on the precise locations within a geographic area where one can acquire firearms does not." *Id.* at 119.

The Court further explained that *Teixeira*'s standard—"whether a challenged regulation meaningfully impairs an individual's ability to access firearms"—is "fully consistent with *Bruen*." *Id.* at 118-19. As the government had previously pointed out (GAB-33), *Teixeira* did not

involve "the type of 'interest-balancing inquiry' that *Bruen* proscribes," 104 F.4th at 118 (quoting *Bruen*, 597 U.S. at 22). In fact, *Teixeira* "determined that it was unnecessary to apply any level of scrutiny" because the "plain text of the Second Amendment only prohibits meaningful constraints on the right to acquire firearms." *Id.* That view, this Court held, aligns with the Supreme Court's repeated assurances that "'laws imposing conditions and qualifications on the commercial sale of arms'" are "'*presumptively lawful* regulatory measures.'" *Id.* (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008) (emphasis in original); *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring)).

Applying *Teixeira*, this Court concluded that a ban on firearm sales on state property did not "meaningfully constrain" the right to keep and bear arms, and thus fell outside the protections afforded by the plain text of the Second Amendment. *Id.* at 119-20. As here (GAB-62), the petitioner made "no allegation that a ban on sales on state property would impair a single individual from keeping and bearing firearms," *B & L Productions*, 104 F.4th at 119. Nor could they, as there were "six licensed firearm dealers in the same zip code" at one

state fairground. *Id.* Because "[m]erely eliminating one environment where individuals may purchase guns does not constitute a meaningful constraint on Second Amendment rights where they can acquire the same firearms down the street," the Court rejected the petitioners' Second Amendment challenge. *Id.*

### B. *Duarte* and *B & L Productions* Confirm that § 922(d)(1) and § 922(a)(1)(A) are Constitutional Following *Bruen*

Like *Vongxay* and *Teixeira*, *Duarte* and *B & L Productions* foreclose defendants' arguments that § 922(d)(1) and § 922(a)(1)(A) are unconstitutional. (GAB-45-65.)

Under *Bruen*, *Duarte*, and *B & L Productions,* § 922(d)(1) constitutionally prohibits selling firearms to felons. *See* 18 U.S.C. § 922(d)(1) (sharing the same definition for "felon" as § 922(g)(1)). Applying *Bruen*, *Duarte* held that "*all* felons" are constitutionally prohibited from possessing firearms. 137 F.4th at 761 (emphasis added). As a result, § 922(d)(1) does not "meaningfully constrain" anyone's right to acquire and possess a firearm. *B & L Productions*, 104 F.4th at 117-20. Because felons have no Second Amendment right to possess firearms, they have no Second Amendment right to acquire them.

The Sixth Circuit recently reached the same conclusion. In analyzing § 922(d)(1), it explained that while the "Second Amendment protects the right to acquire a firearm only when necessary to enable the acquirer to possess or carry one," the "right to acquire is limited by lawful constraints on the right to possess." *United States v. Knipp*, --- F.4th ---, 2025 WL 1431395, at *4 (6th Cir. May 19, 2025). Because § 922(g)(1) is one such lawful constraint, the Sixth Circuit rejected defendant's facial attack on § 922(d)(1). *Id.* (denying as-applied challenge on plain-error review); *see also United States v. Sanches*, 86 F.4th 680, 687 (5th Cir. 2023) (dismissing *Bruen* challenge to § 922(d)(1) on plain-error review).

Schlotterbeck has recognized as much. In his words, whether § 922(d)(1) is constitutional "turns entirely" on whether felons are "legally entitled to possess a firearm." (ARB-4; *see also* AOB-7-8 ("If it is unconstitutional to remove a felon's right to possess a firearm, it follows that it is unconstitutional to prevent an individual from transferring or a selling a firearm to a felon."); AOB-10-11 ("[I]f any individual is presumptively entitled to possess a firearm, every individual must then be entitled to purchase or receive that firearm.").)

Likewise, at oral argument, defense counsel stated that *Duarte* was "fundamental" to his § 922(d)(1) argument, and replied affirmatively when asked "whether the decision in *Duarte* would control that question in this case." (*See* Oral Arg. at 00:28-1:28.) The government agrees. Under *Duarte*, felons do not have a Second Amendment right to possess firearms; thus, no one, including Schlotterbeck, has a Second Amendment right to sell a firearm to a felon.

Similarly, under *Bruen* and *B & L Productions,* § 922(a)(1)(A) constitutionally requires individuals who wish to engage in the business of manufacturing or dealing firearms to obtain a license. 18 U.S.C. § 922(a)(1)(A); *see also* 18 U.S.C. § 923(a), (d) (requiring an applicant to submit an application, be at least twenty-one years old, pay a fee, and establish lawful premises for selling firearms). Applying *Bruen*, *B & L Productions* reaffirmed that the plain text of the Second Amendment does not confer a freestanding right to *sell* firearms but instead confers an ancillary right to *acquire* firearms, which cannot be meaningfully constrained. 104 F.4th at 117-118.

Section 922(a)(1)(A) does not meaningfully constrain anyone's right to acquire firearms. (*See* GAB-63.) For instance, it does not

prevent anyone from acquiring firearms from a *licensed* gun dealer, or even from a private individual who is not selling or manufacturing firearms for a commercial purpose. "Merely eliminating one environment where individuals may purchase guns does not constitute a meaningful constraint on Second Amendment rights when they can acquire the same firearms down the street." *B & L Productions*, 104 F.4th at 119. Indeed, unlike the ban at issue in *B & L Productions*, § 922(a)(1)(A) is no ban at all, and instead merely requires an individual to obtain a license if he or she wishes to engage in the business of selling or manufacturing firearms.

Thus, § 922(a)(1)(A) prohibits conduct that the plain text of the Second Amendment does not cover. And because the plain text of the Second Amendment does not cover defendants' conduct—*unlicensed* gun dealing—the Court need not analyze whether the statute is consistent with the Nation's historical tradition of firearm regulation. *B & L Productions*, 104 F.4th at 117. However, as the government previously argued, it is. (*See* GAB-36-45, 64-65.)[1]

---

[1] As far as the government is aware, only the Fifth Circuit has addressed the constitutionality of § 922(a)(1)(A) following *Bruen*,

(continued . . . .)

* * *

For the reasons set forth above and in the government's answering brief, defendants' convictions should be affirmed.

DATED: June 5, 2025

Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney

CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division

*/s/ Suria M. Bahadue*

SURIA M. BAHADUE
Assistant United States Attorney
Deputy Chief, General Crimes Section

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

---

although only on plain-error review. *United States v. Soto*, 2025 WL 1276242, at *1 (5th Cir. May 2, 2025) (finding no "clear or obvious" error).

## STATEMENT OF RELATED CASES

The government states, pursuant to Ninth Circuit Rule 28-2.6, that it is unaware of any cases related to this appeal.

## CERTIFICATE OF COMPLIANCE

I certify that:

1. This brief complies with the length limits permitted by this Court's Order issued on May 15, 2025 (Dkt. 57.) because the brief is less than 15 pages in length.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

DATED: June 5, 2025

*/s/ Suria M. Bahadue*

SURIA M. BAHADUE
Attorney for Plaintiff-Appellee
UNITED STATES OF AMERICA