**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50281 |
| *Plaintiff-Appellee*, | D.C. No. 2:19-cr-00343-GW-2 |
| v. | |
| JAMES BRADLEY VLHA, | OPINION |
| *Defendant-Appellant*. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50283 |
| *Plaintiff-Appellee*, | D.C. No. 2:19-cr-00343-GW-1 |
| v. | |
| TRAVIS SCHLOTTERBECK, | |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted March 29, 2024
Submission Withdrawn April 3, 2024

Resubmitted July 2, 2025
Pasadena, California

Filed July 9, 2025

Before: Ronald M. Gould, Sandra S. Ikuta, and Danielle J. Forrest, Circuit Judges.

Opinion by Judge Forrest:

### SUMMARY*

**Criminal Law / Second Amendment**

The panel affirmed James Vlha's and Travis Schlotterbeck's convictions under 18 U.S.C. § 922(a)(1)(A) for conspiring to manufacture firearms for sale without a federal license and Schlotterbeck's conviction under 18 U.S.C. § 922(d)(1) for selling a firearm to a felon.

Defendants argued that these two statutes violate the Second Amendment.

When, as here, the challenger is an individual whose direct possessory right to "keep and bear Arms" is not implicated, the ancillary-rights doctrine, which was not abrogated by *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), applies. In this context, the Second Amendment is limited: it protects ancillary

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

activities only if the regulation of such activities meaningfully constrains the core possessory right.

The panel applied the meaningful-constraint test to determine whether the conduct at issue is presumptively protected by the Second Amendment.

The panel held that the text of the Second Amendment does not cover the conduct regulated by § 922(a)(1)(A) because requiring commercial firearm manufacturers to obtain licenses—under a non-discretionary scheme that requires the license to be issued if the applicant pays a filing fee, is at least 21-years old, has premises on which to conduct his business, and is generally compliant with other laws—does not meaningfully constrain would-be purchasers from obtaining firearms. Defendants' constitutional challenge as to § 922(a)(1)(A) therefore fails.

The panel held that Schlotterbeck's facial and as-applied challenges to § 922(d)(1) also fail. The logic of *United States v. Duarte*, 137 F.4th 743 (9th Cir. 2025) (en banc)—which held that 18 U.S.C. § 922(g)(1)'s ban on felons possessing firearms is justified by our nation's history and tradition of disarming people the legislature deems dangerous—dictates the outcome here. Section § 922(d)(1)'s prohibition on firearms to felons cannot meaningfully constrain the possessory rights of felons because they do not have possessory rights.

# COUNSEL

Suria M. Bahadue (argued), Assistant United States Attorney, Deputy Chief, General Crimes Section; Daniel G. Boyle and Brian R. Faerstein, Assistant United States Attorneys; Christina T. Shay and Bram M. Alden, Assistant United States Attorneys, Chiefs, Criminal Division; Bilal A. Essayli and E. Martin Estrada, United States Attorneys; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Plaintiff-Appellee.

Katherine K. Windsor (argued), Law Office of Katherine Kimball Windsor, Pasadena, California; Edward M. Robinson (argued) and Rachael A. Robinson, Law Office of Edward M. Robinson, Torrance, California; for Defendants-Appellants.

# OPINION

FORREST, Circuit Judge:

Defendants James Vlha and Travis Schlotterbeck were convicted under 18 U.S.C. § 922(a)(1)(A) for conspiring to manufacture firearms for sale without a federal license and Schlotterbeck was convicted under 18 U.S.C. § 922(d)(1) for selling a firearm to a felon. Defendants argue that these two statutes violate the Second Amendment. We disagree because the Second Amendment does not apply to Defendants' conduct.

## BACKGROUND

Defendants conspired to manufacture and sell semi-automatic AR-15 firearms without a license in Bellflower, California. They accepted orders for custom assault weapons, created parts using specialized equipment, and assembled and sold the firearms. In 2015 and 2016, Defendants manufactured custom assault weapons and unwittingly sold them to various undercover agents. Schlotterbeck also sold a firearm to a confidential informant who Schlotterbeck believed was a felon.

Defendants were charged with conspiring to engage in the business of manufacturing and dealing of firearms without a license, and Schlotterbeck was charged with selling a firearm to a felon. Defendants moved to dismiss their indictment under Federal Rule of Criminal Procedure 12(b)(3) as unconstitutional under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). The district court denied their motion, and Defendants entered conditional pleas preserving their right to appeal that decision. Defendants timely appealed.

## DISCUSSION

"[A]n indictment sought under a statute that is unconstitutional on its face or as applied will ... be dismissed." *United States v. Mayer*, 503 F.3d 740, 747 (9th Cir. 2007). We review de novo the denial of a motion to dismiss an indictment challenging the constitutionality of the charging statute. *United States v. Howald*, 104 F.4th 732, 736 (9th Cir.), *cert. denied*, 145 S. Ct. 781 (2024). In doing so, we are limited to the allegations within the four corners of the indictment. *Cf. United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). Defendants raise both facial and as-applied challenges to § 922(a)(1)(A) and § 922(d)(1). Challenging a statute as facially unconstitutional is the "'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the [law] would be valid.'" *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Like many other circuits, after the Supreme Court decided *District of Columbia v. Heller*, 554 U.S. 570 (2008), we initially adopted a means-ends balancing test for assessing Second Amendment challenges. *E.g.*, *Teixeira v. County of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) (en banc), *abrogated in part by Bruen*, 597 U.S. at 17. *Bruen* rejected this approach and held that a Second Amendment analysis must be rooted only in the constitutional text and the nation's history and tradition of firearm regulation. *Bruen*, 597 U.S. at 24. Thus, we must begin our analysis by determining whether "the Second Amendment's plain text" covers the regulated conduct at issue. *Id.* If it does, "the Constitution presumptively protects that conduct," *id.* at 24, and the government must justify its regulation by demonstrating that "'historical precedent' from before,

during, and even after the founding evinces a comparable tradition of regulation." *Id.* at 27 (quoting *Heller*, 554 U.S. at 631). But if the text of the Second Amendment does not protect the conduct at issue, a constitutional challenge necessarily fails. *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 120 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1958 (2025) (mem.).

The Second Amendment ensures that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. This provision protects "the individual right to possess and carry weapons" for self-defense. *Heller*, 554 U.S. at 592. Whether the Second Amendment applies depends on whether (1) the challenger is part of "the people," (2) the instrument at issue is an "Arm[]," and (3) the challenger's proposed course of conduct falls within the "right . . . to keep and bear Arms." U.S. Const. amend. II; *see also Heller*, 554 U.S. at 579–92 (textually interpreting each element).

Where the challenger is an individual whose direct possessory right to "keep and bear Arms" is not implicated, as here, our ancillary-rights doctrine applies. Before *Bruen*, we held that the Second Amendment protects some activities ancillary to the core possessory right, including the ability to acquire weapons. *E.g.*, *Teixeira*, 873 F.3d at 676–78. But the Second Amendment is limited in this context: it protects ancillary activities only if the regulation of such activities "meaningfully constrain[s]" the core individual possessory right. *Id.* at 680. There is not "a freestanding right" to sell firearms that is "wholly detached from any customer's ability to acquire firearms." *Id.* at 682; *see also id.* 682–90 (analyzing the history). A vendor challenging a firearms regulation must be able to demonstrate that the would-be

purchasers' core right of possession is being meaningfully constrained. *See id.* at 678, 681–90.

*Bruen* did not abrogate our ancillary-rights doctrine. *B&L Prods.*, 104 F.4th at 120; *see also Duncan v. Bonta*, 133 F.4th 852, 866–67 (9th Cir. 2025) (en banc). This doctrine is based on the text of the Second Amendment, which we have interpreted as prohibiting "meaningful constraints" on the right to possess firearms. *B&L Prods., Inc.*, 104 F.4th at 118. Several of our sister circuits also have adopted our meaningful-constraint test or something like it. *See Gazzola v. Hochul*, 88 F.4th 186, 196–97 (2d Cir. 2023) (citing with approval *Teixeira*'s "meaningful constraint" test); *McRorey v. Garland*, 99 F.4th 831, 839 (5th Cir. 2024) ("The right to 'keep and bear' can implicate the right to purchase. That is why the [Supreme] Court prohibits shoehorning restrictions on purchase into functional prohibitions on keeping. But such an implication is not the same thing as being covered by the plain text of the amendment." (citation omitted)); *see also Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 120 (10th Cir. 2024) ("[L]aws imposing conditions and qualifications on the sale and purchase of arms do not implicate the plain text of the Second Amendment.").

Thus, we apply the meaningful-constraint test at step one of the *Bruen* analysis to determine whether the conduct at issue is presumptively protected by the Second Amendment. *B&L Prods.*, 104 F.4th at 119; *Nguyen v. Bonta*, --- F.4th ---, 2025 WL 1718079, at *2–3 (9th Cir. 2025). We have not defined all the contours of the meaningful-constraint test. But a few examples help clarify its scope. Prohibiting an entire group from purchasing firearms—if the members of the group have the right to possess firearms—would meaningfully constrain their rights. Similarly, "a ban on all sales of a certain type of gun or ammunition in a region

generally implicates the Second Amendment." *B&L Prods.*, 104 F.4th at 119. But "a minor constraint on the precise locations within a geographic area where one can acquire firearms does not." *Id.* Indeed, the plaintiffs in *Teixeira* were not permitted to open a gun store in Alameda County, California because they could not find a location for the store that was more than 500 feet away from schools, day care centers, liquor stores, other gun stores, and residential areas, as required by the local zoning ordinance. 873 F.3d at 674, 676. But we rejected their Second Amendment challenge because their complaint demonstrated that "Alameda County residents may freely purchase firearms within the County." *Id.* at 679. That is, plaintiffs did not show that the core possessory right of would-be purchasers was meaningfully constrained by the zoning ordinance. *See id.* at 680–81.

Similarly, in *B&L Productions*, gun show operators challenged statutes restricting firearm sales on government property that functionally prohibited gun shows from being held at county fairgrounds. *See* 104 F.4th at 111–12. We also rejected their Second Amendment challenge because they did not allege "that a ban on sales on state property would impair a single individual from keeping and bearing firearms." *Id.* at 119. There were "six licensed firearm dealers" located in the relevant zip code and we reasoned that "[m]erely eliminating one environment where individuals may purchase guns does not constitute a meaningful constraint on Second Amendment rights when they can acquire the same firearms down the street." *Id.*

Conversely, in *Nguyen* we recently held that restricting buyers to purchasing one firearm within a 30-day period meaningfully constrains the core right of possession. *Nguyen*, 2025 WL 1718079, at *2–4. And that restriction

was also invalid as to sellers. Both buyers and sellers were subject to penalties for violating the 30-day restriction and the plaintiffs in that case included both buyers and sellers. *See id.* at *1–2.

With these principles in mind, we turn to whether the plain text of the Second Amendment protects the conduct for which Defendants were convicted in this case. *Bruen*, 597 U.S. at 24.

### I.  Unlicensed Manufacturing

Federal law prohibits manufacturing firearms for public sale or distribution without a license. 18 U.S.C. § 922(a)(1)(A).[1] And because Defendants are not asserting possessory rights, whether the Second Amendment protects their unlicensed manufacture of firearms is governed by the ancillary-rights doctrine.

Broadly speaking, we agree with Defendants that the ability to manufacture firearms facilitates individuals' ability to buy firearms, which facilitates the core right to "keep and bear Arms." *See Teixeira*, 873 F.3d at 677 (holding the "core Second Amendment right . . . 'wouldn't mean much' without the ability to acquire arms" (citation

---

[1] "It shall be unlawful—(1) for any person—(A) except a . . . licensed manufacturer . . . to engage in the business of . . . manufacturing . . . firearms . . . ." 18 U.S.C. § 922(a); *see also* 18 U.S.C. § 921(a)(10) ("The term 'manufacturer' means any person engaged in the business of manufacturing firearms or ammunition for purposes of sale or distribution; and the term 'licensed manufacturer' means any such person licensed under the provisions of this chapter."); 18 U.S.C. § 921(a)(21)(A) (stating that a person "engaged in the business" of manufacturing means "a person who devotes time, attention, and labor to manufacturing firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms manufactured.").

omitted)). But federal law does not prohibit manufacturing, only manufacturing "as a regular course of trade or business" *without a license*. 18 U.S.C. §§ 921(a)(21)(A), 922(a)(1)(A). The licensing scheme that Congress created here is not discretionary—the required license must be issued if the applicant pays a filing fee, is at least 21-years old, has premises on which to conduct his business, and is generally compliant with other laws. *See* 18 U.S.C. § 923(a), (d); *see also* 27 C.F.R. §§ 478.41–478.60.

In 2023, there were over 3500 licensed firearms manufacturers in the United States. *See* Bureau of Alcohol, Tobacco, Firearms & Explosives, *2023 Annual Firearms Manufacturers and Export Report* (March 26, 2025), https://www.atf.gov/explosives/docs/report/afmer2023datatablefinal5081xlsx/download [https://perma.cc/J89W-LY8A].[2] That same year, there were also nearly 10 million firearms manufactured by licensed manufacturers. *See* Bureau of Alcohol, Tobacco, Firearms & Explosives, *Annual Firearms Manufacturing and Export Report: Year 2023 Final* (March 26, 2025), https://www.atf.gov/explosives/docs/report/afmer2023finalreportsummarycoversheet5081pdf/download [https://perma.cc/Y5PG-CNX9]. Given this, requiring commercial firearm manufacturers to obtain licenses under the shall-issue scheme challenged here does not meaningfully constrain would-be purchasers from obtaining firearms. *See Teixeira*, 873 F.3d at 680–81. While "any permitting scheme can be put toward abusive ends" through "lengthy wait times in processing license applications or exorbitant fees" and the

---

[2] Reports of government agencies are subject to judicial notice. *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008).

Case: 22-50281, 07/09/2025, ID: 12933582, DktEntry: 66-1, Page 12 of 13

12                         USA v. Vlha

like, *Bruen*, 587 U.S. at 38 n.9, Defendants have not shown any such abuse here. Therefore, we conclude that the text of the Second Amendment does not cover the conduct regulated by § 922(a)(1)(A), and Defendants' constitutional challenge as to this statute fails.

## II.  Sale to a Felon

Section 922(d)(1) prohibits "sell[ing] or otherwise dispos[ing] of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . is under indictment for, or has been convicted in any court of," a felony. 18 U.S.C. § 922(d)(1). Schlotterbeck challenges this statute both facially and as applied in his case. Given our precedent, the answer to this challenge is more straightforward than the challenge to § 922(a)(1)(A).

To determine whether the Second Amendment protects selling firearms to felons, we again apply our ancillary-rights doctrine and ask whether the restriction against such sales meaningfully constrains the would-be purchasers from possessing firearms. *B&L Prods.*, 104 F.4th at 119.

In *United States v. Duarte*, we rejected the Government's argument at step one of the *Bruen* analysis and held that felons are included in "the people." 137 F.4th 743, 752–55 (9th Cir. 2025) (en banc). But at step two, we concluded that § 922(g)(1)'s ban on felons possessing firearms is justified by our nation's history and tradition of disarming people the legislature deems dangerous. *Id.* at 761–62. Indeed, we held that our history and tradition supported *categorically* disarming felons, even those convicted of non-violent offenses. *See id.* at 761. If felons have no Second Amendment right to keep and bear arms, then it necessarily follows that they have no right to purchase firearms.

Schlotterbeck argues that *Duarte* does not apply here because it addressed § 922(g)(1) rather than § 922(d). We disagree. Although *Duarte* addressed a separate provision, its logic dictates the outcome here. Section 922(d)(1)'s prohibition on selling firearms to felons cannot meaningfully constrain the possessory rights of felons because they do not have possessory rights.[3] *Accord United States v. Knipp*, 138 F.4th 429, 435 (6th Cir. 2025). For this reason, Schlotterbeck's facial and as-applied constitutional challenges to § 922(d)(1) also fail.

**AFFIRMED.**

---

[3] We do not reach whether § 922(d) is constitutional in its other applications or as applied to conduct not at issue here.